VICTORIA ACETYLENE COMPANY *vs.* ANDRE R. CUSHING.

Androscoggin.    Opinion September 10, 1908.

*Verdict.    Same Sustained.*

The plaintiff, by defendant's order set up an acetylene gas light machine in the defendant's mill on thirty days' trial. If the machine was satisfactory to the defendant, he agreed to pay $325 for it. The plaintiff brought an action to recover the price. At the trial of the action the defendant contended that he rejected the machine as being unsatisfactory and gave notice thereof within the thirty days to one Waldron who was both the selling and the collecting agent of the plaintiff. The verdict was for the defendant, and the plaintiff filed a general motion for a new trial. *Held:* That the issue presented to the jury was one of fact only, and the verdict is their determination of that issue, reached after deliberation over conflicting testimony and varying inferences arising from the circumstances and conduct of the parties, and that no sufficient reason appears for disturbing the verdict.

On motion by plaintiff.    Overruled.

Action of assumpsit, upon a special contract, to recover the sum of $325 as the purchase price of an acetylene gas light machine which by the defendant's order, had been set up in his lumber mill, on 30 days' trial.    Plea the general issue.    The verdict was for the defendant.    The plaintiff then filed a general motion for a new trial.

The case appears in the opinion.

*Oakes, Pulsifer and Ludden,* for plaintiff.

*Newell & Skelton,* for defendant.

SITTING : EMERY, C. J., WHITEHOUSE, PEABODY, CORNISH, KING, JJ.

KING, J.    The plaintiff set up an acetylene gas light machine in defendant's lumber mill upon the following order :

"You may set up one of your 100 light machines on thirty days trial.    For which if it is satisfactory to me the price will be $325.00 to be paid by a long time note at 6 per cent.    The Victoria

Acetylene Co. to pay freight to Island Falls." This is a re-trial of an action to recover the price. Each trial has resulted in a verdict for the defendant. The first verdict was set aside on a motion for a new trial on the ground of newly discovered evidence. The case is now before the court on plaintiff's general motion to set aside the second verdict.

From an examination of the record we think the evidence reasonably establishes, that the machine was set up and started August 11, 1903; that the lights at first flickered and globes were obtained and adjusted August 21 or 22, which practically remedied that objection; that when the machine was re-charged, as required every few days, the lights would run low for sometime, and also varied in brilliancy at other times, so that they were not sufficiently even and steady for the safe and convenient operation of the mill; that the defendant was notified that his insurance would be cancelled because the machine had been installed at the mill, and one policy, at least, was cancelled and not continued; that the defendant was not satisfied with the machine and disconnected it, and at some time so notified Mr. Waldron, who was both the selling and collecting agent of the plaintiff.

The crux of the issue, however, was whether the defendant seasonably notified Waldron of his dissatisfaction. Upon this point the evidence was much in conflict. The defendant contended that he so notified him "September 3rd or 4th," but Waldron testified that he was not notified until sometime in December "near Christmas." Each party introduced other evidence tending to support his position. It is not deemed necessary to point out here any detailed analysis of the record, and we suggest the following observations only to indicate how conflicting was the testimony offered, on the one side and the other, in support of this vital point in the case, and the inferences that might be drawn therefrom.

Defendant testified in substance that on the 26th of August Mr. Holyoke, the insurance agent, met him in Houlton and notified him that the insurance must be cancelled; that he returned to the mill and disconnected the machine on the 28th of August, after which time it was not used; that he saw Mr. Waldron at Fort Kent

on Sept. 3rd or 4th and told him that the insurance was ordered cancelled, that the machine had been disconnected, and he should not keep it.

As tending to corroborate the defendant on this point Mr. Holyoke testified, that he did find the defendant at Houlton on August 26, and notified him that all of the insurance must and would be cancelled, and requested the return of the policies, which was delayed, but "at a later date, after being informed that the machine had been disconnected, two of the policies were continued and allowed to go in force again at the beginning."

William D. Frazer, defendant's foreman, testified that the machine was disconnected "about the latter part of August or the very first days of September" and was not used after that. Mr. Theriault, of Fort Kent, testified that Mr. Waldron was in Fort Kent between the 1st and 5th of September.

Against this evidence the plaintiff presented.

1.   The testimony of Waldron, in substance that the first time he saw the defendant after the machine was installed was on October 15, at the defendant's mill; that the machine was then in operation and the defendant expressed no objections to it but was satisfied with it and said as soon as he got his insurance adjusted he would settle for it; that he next saw him in November at Fort Kent when defendant said he preferred to give a check rather than the note and would send check the next week; and that the last time he saw defendant was in December "near Christmas," on the train, when he told him for the first time that he should not keep the machine.

2.   The circumstance that on August 14 defendant sent an order for one-half ton of carbide (a material used in the machine) which order was returned unfilled because no check accompanied it, and that between October 12 and 17 defendant sent a check for $70 with an order for one ton of carbide which was shipped to and received by him at the place of his mill.

The fact and circumstances of the purchase of this ton of carbide constitute the newly discovered evidence upon which the motion to set aside the first verdict was based.

In its brief the plaintiff says : "We claim that the evidence in regard to the running of the machine after the time of the thirty days trial had elapsed, especially in view of the order for the carbide in October, is so overwhelmingly in favor of the plaintiff that the decision ought to be set aside." Therein the pith of the plaintiff's motion is stated. The purchase of the ton of carbide does appear to be an unusual transaction, viewed even from the standpoint of the defendant's position, and a natural inference to be drawn from it is, perhaps, that the defendant was influenced by some additional motive other than the necessity to repay Theriault the 200 pounds borrowed of him, as explained by defendant; but the weight and effect of this transaction as tending to prove or disprove the question whether the machine was disconnected as the defendant claimed, or was run until at least October 15, was for the jury. They have passed upon it, and apparently decided that notwithstanding that transaction the machine was not run as Waldron claimed it was.

There are also other important portions of the evidence which present sufficient reasons why the verdict should not be disturbed. The testimony fairly discloses that the machine would consume from 12 to 15 pounds of carbide per day. The defendant had borrowed of Theriault 200 pounds which would last from August 11 to 28, the period during which the defendant says the machine was used, but not much longer. No more carbide was bought, and no more was borrowed.

Where then did the additional 500 to 700 pounds of carbide come from if the machine was run until at least October 15? This question is not answerable from the record. But the plaintiff states that its theory "is that the defendant must have received more carbide from Theriault than he testified to." But the testimony as to the quantity borrowed is not equivocal but direct and uncontradicted, being given not only by the defendant, but also by his foreman, Frazer, and by Theriault, of whom it was borrowed.

Unless the jury disregarded that testimony as false, and assumed an opposite fact without evidence, they could not have reasonably decided that the machine was operated by the defendant as the plaintiff claimed.

The issue presented to the jury was one of fact only, and the verdict is their determination of that issue, reached after deliberation over conflicting testimony and varying inferences arising from the circumstances and conduct of the parties. It is the opinion of the court, from a careful examination of the record, that no sufficient reason appears for disturbing that verdict. Accordingly the entry must be,

*Motion overruled.*